UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

NICHOLAS J. GRASSO,

                              Plaintiff,

          -against-                              1:09-CV-1401 (LEK/RFT)

JOSEPH F. GRASSO, JR., Individually, and
as Limited Administrator of the Estate of
Joseph F. Grasso, Sr., ESTATE OF JOSEPH
F. GRASSO, SR.; OLGA GRASSO, TERESA
GRASSO, MICHELLE GRASSO,

                              Defendants.
_____

## MEMORANDUM-DECISION AND ORDER

     Nicholas J. Grasso commenced this diversity action seeking compensatory and punitive

damages against the estate of Joseph F. Grasso, Sr., Joseph F. Grasso, Jr., Olga Grass, Teresa

Grasso, and Michelle Grasso for conversion, fraudulent conveyance, illegal eavesdropping, the

imposition of a constructive and/or resultant trust.  Am. Compl. (Dkt. No. 14).

     Presently before the Court is Defendants' Motion to dismiss.  Dkt. No. 15.  For the reasons

that follow, Defendants' Motion is granted in part and denied in part.

## I.     BACKGROUND

     The instant action brought by Plaintiff Nicholas J. Grasso ("Plaintiff") against Defendants

Joseph Grasso, Jr., in his individual capacity, and in his capacity as the Limited Administrator of the

Estate of Joseph Grasso, Sr.; the Estate of Joseph Grasso, Sr. ("the Estate"); Olga Grasso ("Olga");

Teresa Grasso ("Teresa""); and Michelle Grasso ("Michelle") (collectively, "Defendants") relates to

a family dispute that has embroiled Plaintiff and his now-deceased brother, Joseph Grasso, Sr.

("Decedent") in over eight years of litigation.  Much of that litigation has concerned property

located at 50 Royal Way, Clearwater Beach, Florida upon which a motel operated ("the property").

While the ownership of the property is the subject of an extensive litigation record, in brief, it was previously owned by Plaintiff and Decedent's father, John Grasso, who transferred it upon his death to his wife, Mary, Decedent, and Plaintiff.  Upon Mary's death, the property passed in equal shares to Decedent and Plaintiff as joint tenants.[1]  For years prior to the commencement of litigation, Decedent insisted that he was the sole owner of the property and, on several occasions, demanded that Plaintiff, a licensed attorney in New York, sign over his interest in the property to Decedent. Pl.'s Aff. (Dkt. No. 21-3) ¶ 10.  Decedent allegedly threatened that if Plaintiff failed to convey his interest, Decedent would make accusations against him to the authorities and the Committee on Professional Standards, including that Plaintiff forged Decedent's signature, and the signature of their parents, on various deeds to real property.  Id.

Plaintiff alleges that, eventually, he and Decedent agreed that Plaintiff would convey his interest in the property to Decedent, and Decedent would transfer his interest in another parcel located in Saratoga County, New York to Plaintiff; Decedent also agreed to drop all claims and threats against Plaintiff.  Id.  ¶¶ 11-3.  Plaintiff conveyed his interest, but Decedent failed to fulfill any of the obligations to which he allegedly agreed.  Id. 13-15.  Instead, Decedent allegedly continued to threaten Plaintiff, purportedly to force him to convey more property to Decedent.  Id..

The dispute between the brothers largely took place over a long distance, with Plaintiff, in New York, talking by telephone to Decedent, in Florida.  Decedent often relayed the content of these conversations to his wife, Olga, also in Florida, and his son, Joseph, Jr. in Oklahoma, who, in

---

[1] This determination was made in an arbitration preceding before the Honorable Leonard A. Weiss.  See Arbitration Decision (Dkt. No. 14-X, Ex. "O") at 10-12 (providing an account of the transfer and rejecting Decedent's claim that the property was intended to be transferred to him only).

turn, would tell his daughters, Michelle and Teresa, also in Oklahoma.  Decedent's Aff. (Dkt. No. 14-3, Ex. J) ¶¶ 7-9; Joseph Grasso, Jr. Aff. (Dkt. No. 14-3, Ex. K) ¶¶ 4-9.  Prior to one conversation in the summer of 2001, Defendants agreed that Olga would stay on the line during the phone call, and Joseph, Jr., Michelle, and Teresa would listen remotely via an Internet Protocol Communication set-up.[2]  Unbeknownst to Plaintiff, who believed his conversation with his brother to be private, Olga, Joseph, Jr., Michelle, and Teresa would listen in so they could later act as witnesses to what was said.  Decedent's Aff. ¶¶ 9-13; Joseph Grasso, Jr. Aff. ¶¶ 10-14; Pl.'s Aff. ¶¶ 34-35.

On March 27, 2002, Decedent brought suit against Plaintiff in New York State Supreme Court for fraud, accounting, breach of fiduciary duty, negligence, impression of a trust, conversion, partition, conspiracy, filing a false 1099 form, intentional infliction of emotional distress, setting aside a deeds of conveyance, and breach of a executory contract.  Dkt. No. 14-1, Ex. A.  On May 30, 2002, Plaintiff, defendant in the state action, answered Decedent's complaint and counterclaimed that Decedent falsely represented the value of the property and that he would release any and all claims against Plaintiff in return for Plaintiff's transferring the property to him; Plaintiff alleged that Decedent made such misrepresentations with the "intent to defraud and deprive [Plaintiff] of valuable property" and ultimately "took control of the said property to the exclusion of [Plaintiff]." State Court Answer (Dkt. No. 14-2, Ex. F) ¶¶ 105-122.  As a result of Plaintiff's reliance on these misrepresentations, Decedent "controlled said property to the exclusion of [Plaintiff] in violation of [his] interest" and "exercised exclusive control of the property and the income therefrom."  Id. ¶¶ 134-35.  Plaintiff identified the income interest as including rental income, insurance loss recovery,

---

[2] Defendants explain that they use this device, which consists of a microphone attached to the phone receiver and a computer input, to talk to one another without paying long-distance telephone fares.  Joseph Grasso, Jr. Aff. (Dkt. No. 14-3, Ex. K) ¶ 10.

proceeds of a mortgage loan, and income generated by a motel company of which Plaintiff was, allegedly a stock-holder.  Id. ¶¶ 123-26.  Plaintiff requested as relief that the "deed to [Decedent] be set aside and conveyed to [Plaintiff]."  Id. ¶ 140.

On June 16, 2004, while the state litigation was ongoing, Decedent, allegedly with the assistance of Joseph Grasso, Jr., sold the property to a third party, Ardent International, LLC ("Ardent").  Am. Compl. ¶22.  Pursuant to that sale, a Warranty Deed granting Decedent and Olga's interest in the property to Ardent was prepared and filed.  Under the terms of the sale, Decedent entered into a series of agreements with Ardent, consisting of a purchase money mortgage granting Decedent a security interest in the property, a promissory note indebting Ardent to Decedent in the amount of $1,038,606.60, and a Collateral Assignment of Leases, Rental Agreement, Rents and profits securing Decedent's interests.  Am. Compl. ¶ 24.

Following the sale, Plaintiff moved for a preliminary injunction to prevent Decedent from dissipating, assigning, alienating, disbursing, commingling or spending the proceeds from that sale. The New York State Supreme Court denied Plaintiff injunctive relief, finding that he had not made the requisite showing to obtain an injunction and, because he was seeking only damages, had an adequate remedy at law for recovery of those funds.  Dkt. No. 14-3, Ex. H.

In April 2008, the parties agreed to suspend their state court litigation and send all pending issues to binding arbitration before the Honorable Leonard A. Weiss ("the arbitrator").  Included in Decedent's submissions to the arbitrator were affidavits, signed May 10, 2008 by Decedent and Joseph Grasso, Jr. while they were in New York, attesting, *inter alia*, to the content of the summer 2001 phone conversation.  Olga, Joseph Grasso, Jr., Michelle, and Teresa then appeared in New York with the intention of testifying to that conversation.  Pl.'s Aff. ¶37.  Plaintiff moved that the

4

arbitrator preclude any statements made by him during the conversation for reasons including that such statements were made in violation of N.Y. C.P.L.R. § 3042 and Florida statute § 934.04; Decedent opposed the motion, claiming that the strict Rules of Law and Evidence do not apply in arbitration proceedings, that Florida law did not apply, or that if it did, was not violated.  See Dkt. No. 14-4, Exs. L, M.  In ruling on Plaintiff's motion, the arbitrator stated that "in the context of this litigation, of this arbitration . . . . [Decedent] can testify to anything that [Plaintiff] said to him . . . . but I am not going to let his granddaughters and his son come in to authenticate and support what he says . . . . I am going to use my relaxed rule and say no way."  Dkt. No. 14-4, Ex. N.

In his arbitration decision, the arbitrator found, *inter alia*, that Plaintiff was not guilty of any forgery or other misconduct and that the property was owned jointly in equal shares by the brothers as tenants in common.  Dkt. No. 14, Ex O at 29.  The arbitrator found that Decedent owed Plaintiff one-half of the proceeds of the sale of the property, which was valued at approximately $1.5 million. Dkt. No. 14-5, Ex. O.  The arbitrator ruled that Decedent should not make a cash payment to Plaintiff; rather, Decedent was required to cause Trans-American, a privately held corporation of which Decedent and Plaintiff's families each owned 50% of the shares, to provide an accounting and issue payment to Plaintiff.  Id. at 28.  If Decedent failed to do so, the arbitrator would hold a hearing to determine the net value of Trans-American and award half that value to Plaintiff.  Id. This decision was vacated by the New York State Supreme Court insofar as it required any direct or indirect issuance of Trans-American stock or that an accounting be made.  The Appellate Division also found that parts of this arrangement exceeded the arbitrator's authority, but vacated the arbitrator's decision only insofar as it directly ordered Trans-American to issue stock of produce an accounting.  In re Grasso, 899 N.Y.S.2d 458 (3d Dep't 2010).

5

Plaintiff brought the instant action on December 17, 2009.  Compl. (Dkt. No. 1).  While related to the same overarching dispute, Plaintiff's current allegations concern the transfer and distribution of the proceeds from the sale of the property, first by Decedent to his son, Joseph Grasso, Jr., and subsequently by Joseph Grasso, Jr. into trust, allegedly for the benefit of Teresa and Michelle.  Plaintiff asserts that these transfers occurred subsequent to January 16, 2006, when a "balloon payment" was made on the sale.  Am. Compl.

Plaintiff's Amended Complaint asserts four causes of action against each of the Defendants: 1) conversion of that portion of the proceeds of the sale of the property plus interest thereon that properly belong to Plaintiff; 2) fraudulent conveyance and concealment of those proceeds; 3) illegal wiretapping in violation of Florida Statute § 934.03 *et seq*. and 18 U.S.C. §§ 2510, 2511, and 2520 *et seq.*; and 4) imposition of a constructive and/or resultant trust.  Defendants seek to dismiss the Amended Complaint, alleging that it names parties over which the Court lacks personal jurisdiction; is barred under the doctrines of *res judicata* and/or collateral estoppel; and fails to state a claim for which relief may be granted.  Mot. to dismiss (Dkt. No. 14).

## II.      PERSONAL JURISDICTION

The Court must first determine whether the exercise of jurisdiction over each Defendant is proper.  A federal court sitting in diversity must look first to the laws of the forum state, in this case New York, for the rules governing personal jurisdiction.  Bensusan Rest. Corp. v. King, 126 F3d 25, 28 (2d Cir. 1997) (citing PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir.1997)).  "First, personal jurisdiction over a defendant must be established under the law of the state where the federal court sits . . . .  Second, if jurisdiction is established under the governing statute, courts must determine whether the exercise of jurisdiction under the relevant state law would violate the

defendant's due process rights." Harris v. Ware, No. 04 CV 1120, 2005 WL 503935, at *1–2

(E.D.N.Y. Mar. 4, 2005) (citing Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d

779, 784 (2d Cir. 1999)).

   In considering a motion to dismiss for want of personal jurisdiction, "'plaintiff bears the

burden of showing that the court has jurisdiction over the defendant." Whitaker v. Am. Telecasting,

Inc., 261 F.3d 196, 208 (2d Cir. 2001) (internal quotations and citations omitted).  Prior to

discovery, a plaintiff may defeat such a motion by making a prima facie showing of jurisdiction by

way of the allegations in the complaint, affidavits, and other supporting evidence. Stein Fibers, Ltd.

v. Bondex Telas Sin Tejar, No. 1:08-CV-210, 2009 WL 385412, at *2 (N.D.N.Y. Feb. 10, 2009)

(Kahn, J.).  A court is to consider these materials in the light most favorable to the plaintiff and

resolve all reasonable doubts in the plaintiff's favor. Id.; Whitaker, 261 F.3d at 208.  Conclusory

allegations, however, cannot support a prima facie showing of personal jurisdiction. See Jazini v.

Nissan Motor Co., 148 F.3d 181, 185 (2d Cir. 1998).

   "Personal jurisdiction in New York State may be established under either § 301 or § 302 of

New York's Civil Practice Law and Rules." Daou v. Early Advantage, LLC, 410 F. Supp. 2d 82, 90

(N.D.N.Y. 2006).

> With respect to in personam jurisdiction, New York recognizes five potential bases: presence,
> consent, domicile, doing business and "long-arm jurisdiction."  The first four of these bases
> were imbedded in the state's jurisdictional law prior to the adoption of CPLR 301 and are
> preserved by that section . . . . Long-arm jurisdiction is the topic of CPLR 302.

N.Y. C.P.L.R. 301 cmt. C301:1 (McKinney 2005).

   New York's long-arm statute, codified at NY C.P.L.R. § 302, does not reach as far as

constitutional due process permits. Research Found. of State Univ. of New York v. Bruker Corp.,

No. 1:09-CV-0071, 2010 WL 981304, at 3 (N.D.N.Y. Mar. 15, 2010) (citations omitted).  Section

7

302(a) allows for the exercise of personal jurisdiction over a foreign defendant if the defendant:

(1) transacts any business within the state . . . ; or
(2) commits a tortious act within the state . . . ; or
(3) commits a tortious act without the state causing injury. . . within the state . . . if he
    (i) regularly does or solicits business, or engages in any other persistent course of conduct,
    . . . in the state; or
    (ii) expects or should reasonably expect the act to have consequences in the state and derives
    substantial revenue from interstate or international commerce; or
(4) owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. 302(a)(1)–(4) (McKinney 2005).

On top of these state requirements, the Constitution's guarantee of due process demands that a defendant have "certain-minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Thus, a defendant have sufficient "minimum contacts" with the forum state, and maintenance of the lawsuit in the forum must be reasonable. See Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 99 (2d Cir. 2000). The ultimate purpose of the due process inquiry is to determine whether a defendant's "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

**A. Defendants Estate of Joseph Grasso, Sr. and Joseph Grasso, Jr., as Administrator**

Defendants Estate of Joseph Grasso, Sr. and Joseph Grasso, Jr. as Administrator consented to jurisdiction in New York State insofar as they initiated and continued lawsuits related to the instant action in that state. See N.Y. C.P.L.R. § 301. Additionally, having purposely availed themselves of the New York courts, the exercise of jurisdiction over these Defendants comports with constitutional due process. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985) ("Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant

8

himself that create a "substantial connection" with the forum State.") (citations omitted).

**B. Olga Grasso, Teresa Grasso, Michelle Grasso, and Joseph Grasso, Jr.**

Plaintiff alleges that Defendants Olga, Teresa, Michelle, and Joseph Grasso, Jr., in their individual capacity, are subject to this Court's jurisdiction under a variety of theories: as persons who committed a tort while in New York; as co-conspirators with Defendants over whom the Court has jurisdiction; as persons who committed a tort outside of New York while engaging in a persistent course of conduct within the state. Plaintiff's claims under each of these theories fails.

New York allows for the exercise of jurisdiction over non-domiciliaries who commit a tortious act while in the State. N.Y. C.P.L.R. § 302(a)(2). Plaintiff's Third Cause of Action asserts that Olga, Teresa, Michelle, and Joseph Grasso, Jr. each committed a tortious act insofar as each, while in New York, allegedly "endeavor[ed] to disclose" information received from an illegal wiretap in violation of federal and Florida State statutes. Pl.'s Aff. ¶¶ 34-40. Plaintiff alleges that in addition to allegedly endeavoring to use the unlawfully intercepted information, Defendants' agreement to use this information constitutes an unlawful conspiracy in furtherance of a malicious prosecution. Id. Because Plaintiff's wiretap claims are dismissed as a matter of law for reasons discussed below, *infra* sec. III.C, they cannot provide a basis for jurisdiction.

Plaintiff next argues that the exercise of jurisdiction is proper under N.Y. C.P.L.R. § 302(a)(3)(i), as each of the Defendants is a person who committed a tort outside of New York while engaging in a persistent course of conduct within the state. Mem. in Opp'n to Mot. to Dismiss (Dkt. No. 21-4) ("Pl.'s Mem.") at 8. The basis for this claim is essentially the same as the alleged in-state tort violation: Defendants allegedly committed a tort outside the state (in Florida) when they unlawfully intercepted a telephone conversation between Plaintiff and Decedent. Id. Assuming the

9

veracity of the out-of-state tort, Plaintiff has still failed to show that Defendants engaged in the requisite persistent course of in-state conduct.  See N.Y. C.P.L.R. § 302(a)(3)(i); see also Ingraham v. Carroll, 90 N.Y.2d 592, 597 (1997).

Plaintiff has not alleged any persistent course of conduct by Olga, Michelle, or Teresa.  Each are non-domiciliaries of New York who do no business in the state and only briefly appeared in New York to act as potential witnesses in one stage of the state court arbitration.[3]  This one-time visit clearly does not constitute a persistent course of conduct.  Plaintiff alleges slightly more facts as to Joseph Grasso, Jr.'s conduct, which, drawing all inferences in Plaintiff's favor, may have been performed in-state.  The acts alleged consist of being "intimately involved in the attempts to extort money and property from [Plaintiff] both before and during the New York State litigation . . . . [and] secur[ing] the purported expert witness from Rochester, New York . . . . Joseph Grasso, Jr. . . . told the expert that the signatures on deeds signed by my brother were forgeries."  Pl.'s Mem. ¶ 23.  In addition to helping secure the expert witness, Joseph Grasso, Jr. "appeared in New York at the time of the depositions and at the arbitration hearing."  Id.  These accusations also fall short of alleging a course of persistent conduct in New York.  Plaintiff does not point to any case, and the Court's independent research has failed to uncover any case, where in-state assistance with finding a witness for litigation and appearances at a deposition or legal proceeding was found to satisfy the persistent course of conduct prong of N.Y. C.P.L.R. § 302(a)(3).  The remaining acts allegedly performed in New York by Joseph Grasso, Jr. were undertaken in his capacity as administrator of the estate.

Finally, Plaintiff's claim that Defendants are subject to this Court's jurisdiction based on their being in an agency or co-conspirator relationship with the estate is unsupported.  Plaintiff has

_____

[3] None of these Defendants ultimately provided testimony.

not alleged facts sufficient to show any such relationship legally existed such that the estate's actions in New York could be attributed to the other Defendants.  Accordingly, the Court lacks jurisdiction over Olga, Michelle, Teresa, and Joseph Grasso, Jr. in his individual capacity.

### III.   CLAIM PRECLUSION, ISSUE PRECLUSION, and FAILURE to STATE a CLAIM

Defendants allege that each and every cause of action in Plaintiff's Amended Complaint is barred by the doctrines of claim preclusion and/or issue preclusion.  Defendants further assert that each cause of action in Plaintiff's Amended Complaint is time-barred and otherwise frivolous, and should be dismissed.  See generally Defs.' Mem. of Law (Dkt. No. 14-7) ("Defs.' Mem.).

####   A.   Standards of Review

*1. Preclusion*

The doctrine of claim preclusion "holds that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Monahan v. N.Y. City Dep't of Corr., 214 F.3d 275, 284 (2d Cir. 2000) (internal quotation marks omitted).  The doctrine bars a subsequent action by the same plaintiff or those in privity with that plaintiff from asserting claims that either were, or could have been, raised in a prior action that resulted in a final judgment on the merits.  Allen v. McCurry, 449 U.S. 90, 94 (1980); see also FED. R. CIV. P. 13(a) (requiring a party state as a counterclaim any claim she has if the claim arises out of the same transaction or occurrence that is the subject of the adverse party's complaint and does not require adding a party over whom the court lacks jurisdiction).  "Claim preclusion does not bar claims, even between identical parties, that arise after the commencement of the prior action." Bank of New York v. First Millennium, 607 F.3d 905, 919 (2d Cir. 2010) (citing Storey v. Cello Holdings, LLC, 347 F.3d 370 (2d Cir. 2003)); see also SEC v. First Jersey Sec., Inc.,

101 F.3d 1450, 1464 (2d Cir. 1996) ("If the second litigation involved different transactions, and especially subsequent transactions, there generally is no claim preclusion."). Moreover, "a second action may not be barred even if both actions arise from an identical course of dealing, if the elements of proof and evidence required to sustain recovery vary materially." Coliseum Towers Assoc. v. County of Nassau, 637 N.Y.S.2d 972 (2d Dep't 1996) (citation omitted); Smith v. Kirkpatrick, 305 N.Y. 66, 72 (N.Y. 1953).

Issue preclusion, or collateral estoppel "prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 288 (2d Cir 2002). For issue preclusion to apply, "(1) the issues of both proceedings must be identical, (2) the relevant issues were actually litigated and decided in the prior proceeding, (3) there must have been 'full and fair opportunity' for the litigation of the issues in the prior proceeding, and (4) the issues were necessary to support a valid and final judgment on the merits." Central Hudson Gas & Elec. Corp. v. Empressa Naviera Santa S.A., 56 F.3d 359, 368 (2d Cir. 1995).

2. *Failure to State a Claim for which Relief may be Granted*

When presented with a motion to dismiss for failure to state a claim for which relief may be granted, see FED. R. CIV. P. 12(b)(6), a court must first review each allegation in the complaint and exclude from consideration all allegations that are stated in a "conclusory" fashion. Ashcroft v. Iqbal, __ U.S.__, 129 S. Ct. 1937, 1949-50 (2009). A court is to deem true all factual allegations and draw all reasonable inferences therefrom in favor of the plaintiff. In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007) (citation omitted). However, allegations that merely announce "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action" are not entitled to

12

any presumption of truth and are insufficient to defeat a motion to dismiss.  Id.; Rivera-Powell v. N.Y. City Bd. of Elections, 470 F.3d 458, 470 (2d Cir. 2006).

Next, a court must assess whether the well-pleaded allegations plausibly state a claim for which relief may be granted.  Iqbal, 129 S. Ct. at 1950.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. at 1949 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  To survive a motion to dismiss, a complaint, therefore, must do more than "plead[] facts that are 'merely consistent with' a defendant's liability[;]" it must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (quoting Twombly, 550 U.S. at 556).  Whether a complaint states a plausible claim is a "context specific" determination that "requires the reviewing court to draw on its judicial experience and common sense."  Id. at 1950.

## B.     First Cause of Action: Conversion

Defendants assert that Plaintiff's First Cause of Action for conversion is precluded because it "is identical to plaintiff's entire Counterclaim in State Court action which was based upon the transfer of his interest in the property . . . to his brother."  Defs.' Mem. at 1.  They are correct.

In the instant action, Plaintiff's conversion claim[4] asserts that Defendants "have converted to their own use and benefit and/or deprived plaintiff from . . . *that portion of the proceeds of the sale*

---

[4]  "Conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights."  Vigilant Ins. Co. of America v. Hous. Auth. of City of El Paso, Texas, 87 N.Y.2d 36, 43 (N.Y. 1995).  "To establish conversion the plaintiff 'must demonstrate legal ownership or an immediate superior right of possession to a specific identifiable thing' and that the defendant exercised an unauthorized dominion over that property, which can be specific money, to the exclusion of the plaintiff's rights."  Meese v. Miller, 79 N.Y.S.2d 237, 242-43 (4th Dep't 1981) (internal citations omitted).

13

*of the property* . . . which belongs to Nicholas Grasso . . . in the amount of ½ the sale price . . . together with ½ the interest . . . from March 10, 2009." Am. Compl. ¶ 29 (emphasis added). Plaintiff asserts that he did not counterclaim for conversion in the state action and that his instant conversion claim is a separate and distinct claim from that raised in the prior action, which he characterizes as involving only the procurement of the deed by fraudulent means. Pl.'s Mem. at 14. Plaintiff's characterization of the prior action is belied by his answer in that action and by unequivocal statements made by the arbitrator in his August 20, 2008 decision. For example, the arbitrator noted, "[i]n his counterclaim, Nicholas has asserted his claim to one-half the proceeds, $1.5 Million [Decedent] realized from the sale of the [motel property], which he and [Decedent] owned as tenants in common." Dkt. No. 14-5, Ex. O at 8. The arbitrator reached the merits of this claim, essentially ruling in favor of Plaintiff by finding Decedent to be indebted to Plaintiff for half of the $1.5 million proceeds after offsetting certain awards. Id. at 28. The arbitrator's award was largely upheld on appeal. In re Grasso, 899 N.Y.S.2d 458. Under these circumstances, Plaintiff may seek enforcement of the judgment in state court, but he cannot relitigate an identical claim against the same parties.[5]

## C.   Second Cause of Action: Fraudulent Conveyance

Plaintiff's Second Cause of Action alleges that Defendants fraudulently conveyed and concealed the proceeds from the sale of the motel property in violation of N.Y. Debtor and Creditor

---

[5] Given the above conclusion that this Court may exercise jurisdiction only over the estate and Joseph Grasso, Jr., in his capacity as administrator of the estate, the same parties requirement for claim preclusion is met.

14

Law §§ 270, 273, 273-a, 275, 276, 276-a, 278, 279 *et seq.*[6]  Am. Compl. ¶¶ 32-37.  Defendants

again contend that this claim is precluded; Plaintiff asserts that the claim involves a separate and

distinct transaction occurring subsequent to the one litigated in state court.

The sale of the property occurred during the course of the state court litigation, years after

Plaintiff entered his counterclaim.  Rather than relitigating his claim that he was deprived of the use

and income derived from the property, Plaintiff's fraudulent conveyance claim seeks to recover for

damages he suffered attendant to a transaction that occurred "after the commencement of the prior

action."  Bank of New York, 607 F.3d at 919.  That subsequent transaction involved the allegedly

fraudulent transfer and concealment of proceeds from the sale of the property to Joseph Grasso, Jr.,

and a second conveyance of those proceeds into a trust benefitting Michelle and Teresa.  Am.

Compl. ¶ 35.  Decedent allegedly received no consideration for these transfers, which left his estate

penniless and unable to satisfy a judgment in Plaintiff's favor.  Id.; Pl.'s Aff. ¶ 33; Pl.'s Mem. at 13.

Because this claim involves a different transaction, the transfer of proceeds from the sale of

the property rather than the ownership of that property, and because the transfer occurred subsequent

to the earlier claim, claim preclusion does not apply.  See First Jersey Sec., 101 F.3d at 1464.

---

[6] To state a § 273-a fraudulent conveyance claim, plaintiff must allege: (1) the conveyance was made without fair consideration; (2) at the time of transfer, the transferor was a defendant in an action for money damages or a judgment in such action had been docketed against him; and (3) a final judgment has been rendered against the transferor that remains unsatisfied.  DEBT. & CRED. § 273-a; Neshewat v. Salem, 365 F. Supp. 2d 508, 518-19 (S.D.N.Y. 2005).  Where suit is brought pursuant to § 276, a plaintiff must additionally allege that the conveyance was made "with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors."  DEBT. & CRED. § 276; Hassett v. Goetzmann, 10 F. Supp. 2d 181, 188 (N.D.N.Y. 1998).  "[W]here the assets fraudulently transferred no longer exist or are no longer in possession of the transferee, a money judgment may be entered in an amount up to the value of the fraudulently transferred assets. . . . [A] creditor may recover money damages against parties who participate in the fraudulent transfer and are either transferees of the assets or beneficiaries of the conveyance."  Neshewat, 365 F. Supp. 2d at 521-22.

Further, preclusion of Plaintiff's claim would be inappropriate "even though successive actions have arisen out of essentially the same course of dealing, because '[t]he requisite elements of proof and hence the evidence necessary to sustain recovery vary materially.'" Julien J. Studley, Inc. v. Lefrak, 48 N.Y.2d 954, 956 (N.Y. 1979) (quoting Matter of Reilly v Reid, 45 NY2d 24, 30 (N.Y. 1978)).  In the first action, what was required was proof that Plaintiff had not forged signatures, that the motel property was originally held by Plaintiff and Decedent in joint tenancy, that Decedent made misrepresentations upon which Plaintiff relied resulting in the latter's conveyance of his interest in the property to the former, and that Plaintiff held an interest in the motel company.  Here, what must be proved, *inter alia*, is that a transfer of the proceeds from the sale of the property out of the estate was made without fair consideration, that Decedent was then-defending in an action for money damages, that Decedent has failed to satisfy a judgment in that action; and that the conveyance was made with actual intent to hinder, delay, or defraud Plaintiff's acquisition of the debt owed.  N.Y. DEBT. & CRED. § 273-a; N.Y. DEBT. & CRED. § 276; Dempster v. Overview Equities, Inc., 773 N.Y.S.2d 71 (2d Dep't 2004).  Accordingly, claim preclusion does not apply.

Defendants argue that Plaintiff is precluded from litigating how the proceeds of the sale were treated as a result of the arbitrator's post-sale denial of Plaintiff's motion for a preliminary injunction to prevent Decedent from transferring the proceeds from the sale.  See Defs.' Mem. at 2; June 26, 2006 Decision and Order (Dkt. No. 14-3, Ex. H).  Neither claim preclusion nor issue preclusion apply in these circumstances, however, as the denial of preliminary injunctive relief was not an adjudication on the merits and did not entail a final decision of the relevant issues.

Moreover, the elements of proof required of Plaintiff in seeking a preliminary injunction are different from those he now raises.  Injunctive relief not only requires a party to show a likelihood

16

of success on the merits, irreparable harm in the absence of injunctive relief, and a balance of the equities tipping in the movant's favor, Doe v. Axelrod, 73 N.Y.2d 748, 750 (N.Y. 1988), it also requires that the movant has no adequate remedy at law, see Equestrian Assoc. v. Freidus, 595 N.Y.S.2d 984 (2d Dep't 1993).  Thus, an injunction will not lie where, as was the case, only money damages are sought.  See Credit Agricole Indosuez v. Rossiyskiyy Kredit Bank, 94 NY2d 541, 548-49 (N.Y. 2000).  For all of these reasons, neither the doctrine of claim preclusion nor issue preclusion prevents Plaintiff from litigating his instant fraudulent conveyance claim.

Plaintiff's fraudulent conveyance claim is also not subject to dismissal under Rule 12(b)(6). Defendants' assertion that the claim is time-barred is based upon their misapprehension as to the subject of Plaintiff's claim.  Defendants acknowledge that the applicable statute of limitations for such a claim is six years from the occurrence of the alleged fraud, or two years from the time Plaintiff had a reasonable opportunity to discover that alleged fraud.  Defs.' Mem. at 5. (citing N.Y. C.P.L.R. § 213(8)).  Defendants suggest that the claim involves only the land conveyance from Plaintiff to Decedent, rather than the transfer of the sale proceeds out of the estate and into trust.  Id. Plaintiff's claim, however, clearly relates to the transfer of proceeds following the sale of the property to Ardent, not the transfer of property between Plaintiff and Decedent.  The sale to Ardent took place on June 16, 2004.  Ardent made the balloon payment called for by the sale in January 2006.  Following that payment, Decedent is alleged to have made the fraudulent transfers that form the basis of his action.  Thus, Plaintiff's cause of action did not accrue until January 2006 at the earliest.  Plaintiff filed his Complaint December 17, 2009, well within the statute of limitations.

Additionally, Plaintiff's claim is far from frivolous.  Plaintiff alleges that, while an action was proceeding against Decedent, Decedent sold the property and transferred the proceeds, without

17

fair consideration, to relatives, leaving the estate without any means of paying the judgment

eventually handed down in that action.  Pl.'s Mem. at 13.  Where such "badges of fraud" accompany

a transfer, an inference of fraudulent intent arises.  Dempster, 773 N.Y.S.2d 71; Hassett 10 F. Supp.

2d at 188 (citing United States v. McCombs, 30 F.3d 310, 328 (2d Cir. 1994)).  Plaintiff has offered

sufficient factual allegations to support a claim for fraudulent conveyance in violation of N.Y.

Debtor and Creditor Law and may proceed with this claim.

### C.      Third Cause of Action: Unlawful Wiretap

Plaintiff's Third Cause of Action alleges violations of Florida and federal wiretapping

statutes.  Specifically, Plaintiff alleges that Joseph Grasso, Jr., Olga, Michelle, and Teresa violated

Florida statute § 934.03 *et seq.* and 18 U.S.C. §§ 2510, 2511, and 2520 *et seq.*  Plaintiff names two

distinct violations, each of which allegedly constitute violations of these statutes.  The first involves

the act of intercepting Plaintiff and Decedent's conversation; the second involves Defendants'

"endeavoring to use" the information from that conversation when they appeared in New York

willing to testify about its content, in what Plaintiff characterizes as a malicious prosecution.  For

the reasons that follow, Plaintiff's claim is dismissed.[7]

#### 1.  *Alleged violation of State law*

Plaintiff acknowledges that the conduct alleged does not violate New York law.  Dkt. No.

14-4, Ex. L at 4.  In New York, where either a sender or receiver consents to the interception of an

intrastate call, such interception does not constitute unlawful wiretapping.  N.Y. PENAL § 250.00(1);

N.Y. C.P.L.R. § 4506(2).  Moreover, New York does not provide for any private right of action for

---

[7] The Court will consider this Cause of Action as it relates to all Defendants because, if it did state a valid claim, the Court could exercise jurisdiction over them.  N.Y. C.P.L.R. § 302(a)(2).

an alleged illegal wiretap.  There is no dispute that Decedent consented to the other Defendants'

listening in on the conversation.

By contrast, Florida law makes it unlawful for any person to "[i]ntentionally intercept[ or]

endeavor[] to intercept . . . any wire, oral, or electronic communication;" or to "[i]ntentionally

disclose[], or endeavor[] to disclose, to any other person the contents of any wire, oral, or electronic

communication, knowing . . . that the information was obtained through [such] interception"

without the prior consent of all parties.  FLA. STAT. § 934.03.  Florida law additionally provides for

a civil right of action "against any person or entity who intercepts, discloses, or uses, or procures

any other person or entity to intercept, disclose, or use, such communications," and  provides for a

two-year statute of limitations on such claims.  FLA. STAT. § 934.10.

A federal court sitting in diversity applies the substantive law of the forum state, including

its choice of law rules.  Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496-97(1941) (citing

Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)); 28 U.S.C. § 1652.  The interest analysis that

guides New York's choice of law rules asks a court to determine and apply the laws of the

jurisdiction that has the greater interest in the litigation; to do so, a court must decide "1) what are

the significant contacts and in which jurisdiction are they located; and, (2) whether the purpose of

the law is to regulate conduct or allocate loss."  Padula v. Lilarn Props. Corp., 84 N.Y.2d 519, 521

(N.Y. 1994) (citing Schultz v. Boy Scouts of America, Inc., 65 N.Y.2d 189, 197-98 (N.Y. 1985)).

In the instant action, Plaintiff is a domicilliary of New York; all other Defendants are

domiciled in either Florida or Oklahoma.  The allegedly unlawful conduct occurred first in Florida,

where the intercepts took place; then in New York, where a second alleged tort -- the endeavoring to

use intercepted information in witness testimony -- occurred.  The purpose of Florida Statute §

19

934.03. is to regulate conduct, not allocate loss; however, the purpose of Florida Statute § 934.10, which provides a private right of action for violations of § 934.03, is loss allocation. See Padula, 84 N.Y.2d at 311-12 ("Conduct-regulating rules have the prophylactic effect of governing conduct to prevent injuries from occurring . . . . Loss allocating rules, on the other hand, are those which prohibit, assign, or limit liability after the tort occurs"). Where a conduct-regulating rule is at issue, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders. But if competing 'postevent remedial rules' are at stake other factors are taken into consideration, chiefly the parties' domiciles" Cooney v. Osgood Mach., Inc., 81 N.Y.2d 66, 72 (N.Y. 1993) (citing Schultz, 65 N.Y.2d at 197-99)). Where a defendant's allegedly unlawful conduct occurs in one jurisdiction and the injury to a plaintiff is felt in another, "the place of the wrong is considered to be the place where the last event necessary to make the actor liable occurred." Schultz, 65 N.Y.2d at 94.

"Post-event remedial rules," or loss-allocation rules, are subject to the rules announced in Neumeier v. Kuehner, 31 N.Y.2d 121 (N.Y. 1972).[8] Of relevance to the instant dispute is the third Neumeier rule, which applies where the parties are domiciled in different states, but where local law does not favor the respective domicile. Id. at 128. Under this rule, a court should generally apply the law of the place where the injury occurred, unless "'displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multistate system or producing great uncertainty for litigants'" Id. Effectively, this rule announces a strong preference for application of the law of the place of injury. Cooney, 81 N.Y.2d at 74.

_____

[8] The Neumeier rules were originally articulated to address guest-statutes, but have been deemed applicable to other loss allocation conflicts. See Schultz, 65 N.Y.2d at 200-01.

With regard to the first violation alleged by Plaintiff, the intercepting of the phone call, Florida law applies.  FLA. STAT. § 934.03 prohibits the interception of wire communications.  FLA. STAT. § 934.10 provides for a civil right of action for any person whose wire communication is so intercepted; it requires no further action or proof of injury for liability to attach.  The interception occurred in Florida.  The smooth working of the multistate system would not be affected by applying that state's law, nor would the litigants' reasonable expectation be disrupted.

However, even though Florida's substantive law applies to this alleged violation, New York's procedural rules govern, including its statute of limitations.  Bournias v. Atlantic Maritime Co., 220 F.2d 152, 154 (2d Cir. 1955) ("it is a well-settled conflict-of-laws rule that the forum will apply the foreign substantive law, but will follow its own rules of procedure . . . . [F]or the purpose of deciding whether to apply local law or foreign law, statutes of limitations are classified as 'procedural.'").  New York requires that actions for most intention torts, including invasion of privacy, be brought within one-year.  N.Y. C.P.L.R. § 215.  Given that the alleged violation took place in 2001,  Pl.'s Aff. ¶ 34, Plaintiff's claim is time-barred.[9]

With regard to the second tort violation alleged by Plaintiff, New York law applies.  Plaintiff asserts that Defendants Olga, Joseph Grasso, Jr., Michelle, and Teresa committed a tort while in New York, when, in violation of FLA. STAT. § 934.03, they "endeavored to use" the information they gathered through the alleged wiretap by appearing in New York, willing to testify regarding that information in furtherance of a malicious prosecution.  Pl.'s Mem. at 2-3.  Here, the locus of injury is clearly New York, and that state's law applies.  Plaintiff has no cause of action under New

---

[9] The same result follows if the six-year statute of limitations authorized by N.Y. C.P.L.R. § 213(1), governing an actions for which no limitation is specifically prescribed by law, applies.

York law.  Additionally, even if Florida law were to apply, New York's statute of limitations for invasion of privacy and malicious prosecution is one-year.  N.Y. C.P.L.R. § 215.  Defendants arrived in New York in May 2008.  Plaintiff did not bring his action until December 2009.  His claim is, therefore, additionally, time-barred.

   *2.  Alleged violation of federal law*

Plaintiff next alleges violations of federal wiretapping statutes codified at 18 U.S.C. §§ 2510, 2511, and 2520 *et seq*.  Federal law, like the Florida statute, makes it unlawful for any person to "intentionally intercept[ or] endeavor[] to intercept . . . any wire, oral, or electronic communication;" or "intentionally disclose[ or] endeavor[] to disclose to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was [so] obtained." 18 U.S.C. § 2511.  Generally, it is not "unlawful . . . for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State."  18 U.S.C. § 2511(2)(d).  The federal statutes' applicable statute of limitations is two years.  18 U.S.C. § 2520(e).

Plaintiff asserts that Defendants' actions fall into the exception to one-party consent because Defendants allegedly intercepted the wire communication with "the purpose of committing [a] criminal or tortious act in violation" of New York law.  18 U.S.C. § 2511(2)(d).  Pl.'s Mem. at 7. Specifically, Plaintiff claims that Defendants purposefully endeavored to use the intercepted communication "in furtherance of a conspiracy to extort and defraud plaintiff in violation of New

York Law." Id. (citing N.Y.PL. 135.60, Coercion and § 155.05, Larceny).

Plaintiff's claim is untenable.  As to the first alleged violation, the intercept, his claim was brought well beyond the two-year statute of limitations.  With regard to the second alleged violation, assuming, *arguendo*, that Plaintiff may bring a cause of action under the federal wiretap statues as he proposes, he has failed to state a plausible claim that Defendants violated New York's coercion or larceny penal laws.

> A person is guilty of coercion . . . when he or she compels or induces a person to engage in conduct which the latter has a legal right to abstain from engaging in . . . by means of instilling in him or her a fear that, if the demand is not complied with, the actor or another will:
> ***
> 4) Accuse some person of a crime or cause criminal charges to be instituted against him . . .; or
> 5. Expose a secret or publicize an asserted fact, whether true or false, tending to subject some person to hatred, contempt or ridicule; or
> ***
> 7. Testify or provide information . . . with respect to another's legal claim or defense

N.Y. Penal § 135.60.

> A person obtains property [through larceny] by false promise when, pursuant to a scheme to defraud, he obtains property of another by means of a representation . . . that he . . . will . . . engage in particular conduct, and when he does not intend to engage in such conduct . . .
> ***
> A person obtains property [through larceny] by extortion when he compels or induces another person to deliver such property to himself or to a third person by means of instilling in him a fear that, if the property is not so delivered, the actor or another will:
> ***
> (iv) Accuse some person of a crime or cause criminal charges to be instituted against him; or
> ***
> (v) Expose a secret or publicize an asserted fact, whether true or false, tending to subject some person to hatred, contempt or ridicule; or
> ***
> (vii) Testify or provide information or withhold testimony or information with respect to another's legal claim or defense; or

N.Y. Penal § 155.05.

Plaintiff alleges that Decedent "threatened to go to the authorities including the local district

23

attorney in Schenectady, New York, the Committee on Professional Standards of the appellate division and the press" if Plaintiff did not convey his interest in the motel property to Decedent. Am. Compl. ¶ 10.  He conveyed his interest in the property to Decedent only after Decedent promised, in exchange, to drop all claims against Plaintiff, something Decedent failed to do. Plaintiff contends, and Defendants' affidavits attest to the fact that, Joseph Grasso, Jr. Olga, Michelle, and Teresa agreed to listen to a conversation between Decedent and Plaintiff about the disputed property and testify as to what Plaintiff said.  These allegations fail to show that Defendants conspired to commit coercion or larceny.

Plaintiff's claims against Decedent were the subject of the state court litigation.  His Amended Complaint is replete with conclusory statements as to Defendants' participation in a conspiracy to extort and defraud Plaintiff, but strikingly bare on factual allegations to support this claim.  Specifically, with regard to his wiretap claim, Plaintiff's factual allegations amount to nothing more than that Defendants agreed to secretly listen to a conversation and testify about its content in a legal dispute between Decedent and Plaintiff.  There is nothing in the pleadings as to their purposefully instilling fear in Plaintiff as to the consequences of his not complying with their demands, nor anything suggesting that they made or conspired with Decedent to make fraudulent promises to induce Plaintiff to convey the property.  The facts alleged do not plausibly support Plaintiff's claim that Defendants intercepted a communication with the purpose of violating New York's coercion or larceny laws.  Plaintiff's Third Cause of Action is, therefore, dismissed.

### D.      Fourth Cause of Action: Constructive and/or Resultant Trust

As a Fourth Cause of Action, Plaintiff "seeks a determination that a constructive and/or

resultant trust be imposed and impressed upon the proceeds of the sale of the property."[10]  Am.

Compl. ¶ 50.  Plaintiff is estopped from asserting this claim as to the estate and its administrator, as

he had the opportunity to include it in the prior state action.  See FED. R. CIV. P. 13(a)(1).  Plaintiff

failed to do so, and failed to file a supplemental pleading requesting such relief once the sale

occurred.  Instead, he continued to litigate his claim, seeking money damages only.  Having largely

prevailed in that action, Plaintiff may seek to enforce the judgment by cannot now raise a claim

against that "ar[ose] out of the transaction or occurrence that is the subject matter" of the prior

action.  Id.; Valley Disposal Inc. v. Central Vermont Solid Waste Management, 113 F.3d 357, 364-

65 (2d Cir. 1997); In re Zinke, CV-91-0805, 1991 WL 107815 (E.D.N.Y. 1991) (upholding

bankruptcy court's decision permitting a party to amend answer to assert a constructive trust request

as a compulsory counterclaim).  This Court has no jurisdiction over the remaining Defendants and

cannot impose the relief requested against them.  Plaintiffs Fourth Cause of Action is dismissed.

IV.     CONCLUSION

        Based on the foregoing discussion, it is hereby

        ORDERED, that Defendants' Motion to dismiss (Dkt. No. 14) is GRANTED in part and

DENIED in part consistent with this opinion; and it is further

        ORDERED, that Plaintiff's action is DISMISSED in its entirety as to Olga Grasso,

Michelle Grasso, Teresa Grasso, and Joseph Grasso, Jr., in his individual capacity; and it is further

---

        [10] A constructive trust generally requires: (1) a confidential or fiduciary relationship, (2) a
promise, (3) a transfer in reliance thereon, and (4) unjust enrichment.  In re Knappen, 655 N.Y.S.2d
110 (3d Dep't 1997).  "These factors, however, are simply guidelines and their rigid application is
not required."  Id. (citation omitted); Bausch & Lomb Inc. v. Alcon Labs., Inc., 64 F. Supp. 2d 233,
252 (W.D.N.Y. 1999).  Rather, "the ultimate purpose of a constructive trust is to prevent unjust
enrichment and . . . may be imposed whenever necessary in order to satisfy the demands of justice."
Knappen, 655 N.Y.S.2d at 111 (internal citations omitted); Bausch & Lomb, 64 F. Supp. 2d 254.

**ORDERED**, that Plaintiff's First, Third, and Fourth Causes of Action are **DISMISSED**;

and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED.**

DATED:       September 22, 2010
             Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge

26